UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

CLARA HICKERSON,                                                           17 Civ. _____

                   Plaintiff,                                    :

                                                 :                    **COMPLAINT**

          - against -                                                               **Plaintiff Demands**
                                                 :                    **Trial by Jury**

UBER TECHNOLOGIES, UBER USA, LLC (*a
wholly owned subsidiary of Uber Technologies*),                :
RAISER-NY, INC. (*a wholly owned subsidiary
of Uber Technologies*), CH BROTHERS INC.                    :
and AMA FAHAD,

                                                 :

                   Defendants.
-------------------------------------------------------------------x

     Plaintiff Clara Hickerson, by her attorneys McCarthy | Kelly LLP, states and alleges the

following upon information and belief:

### PARTIES

     1.     Plaintiff Clara Hickerson was and still is a resident of the State of Virginia

residing at 40723 Cool Valley Circle, Aldie, VA 20105.

     2.     Defendant Uber Technologies (hereinafter referred to herein as defendant "Uber")

was and still is a foreign corporation organized and existing by virtue of the laws of the State of

Delaware, is authorized to transact business in the State of New York, with its principal place of

business located at 1455 Market Street, Suite 400, 4th Floor, San Francisco, CA 94103.

     3.     Defendant Uber USA, LLC (hereinafter referred to herein as defendant "Uber

USA")  was and still is a New York Limited Liability Company duly organized and existing

under and by virtue of the laws of the State of New York with its principal place of business

located at 2755 Jackson Ave, Long Island City, NY 11101.

     4.     Defendant Uber USA is a wholly owned subsidiary of defendant Uber.

5.      Defendant Raiser-NY, Inc. (hereinafter referred to herein as defendant "Raiser") was and still is a New York Corporation duly organized and existing under and by virtue of the laws of the State of New York with its principal place of business located at 636 28th Street, 3rd Floor, New York, NY 10001.

6.      Defendant Raiser is a wholly owned subsidiary of defendant Uber.

7.      Defendant CH Brothers, Inc. (hereinafter referred to herein as defendant "CH") was and still is a New York Corporation duly organized and existing under and by virtue of the laws of the State of New York with its principal place of business located at 26 Ebbitts Street, Suite 3T, Staten Island, NY 10306.

8.      Defendant Ama Fahad (hereinafter referred to herein as defendant "Fahad") was and still is a resident of the State of New York and, upon information and belief, resides at 40-000 Judge Street, Apartment 5J, Queens, NY 11373.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1332(c) and 1446(c) as the plaintiff and the defendant are citizens of different states and the amount in controversy is in excess of $75,000 exclusive of interest and costs.

10.     Venue of this action in the Southern District of New York is proper pursuant to 28 U.S.C. 1391 because plaintiff's claims arise in the Southern District of New York and because defendants are subject to personal jurisdiction in the Southern District of New York.

## FIRST CAUSE OF ACTION

11.     Plaintiff repeats, reiterates and reasserts all of the allegations as contained in the above paragraphs with the same force and effect as if fully set forth herein.

12.     Upon information and belief, at all times herein mentioned, defendant CH was and still is the owner of a certain 2015 Toyota bearing license registration number T729131C

(hereinafter referred to as "defendants' car") and on September 2, 2017 and at all times hereinafter mentioned defendant Fahad was the driver of defendants' car.

13.     Upon information and belief on or before September 2, 2017 defendant CH operated, maintained, controlled, repaired defendants' car pursuant to a written agreement with defendant Uber wherein defendant CH acted as an agent of defendant Uber.

14.     Upon information and belief on or before September 2, 2017 defendant CH operated, maintained, controlled, repaired defendants' car pursuant to a written agreement with defendant Uber wherein defendant CH acted as an employee of defendant Uber.

15.     Upon information and belief on or before September 2, 2017 defendant CH operated defendants' car as an agent of defendant Uber.

16.     Upon information and belief on or before September 2, 2017 defendant CH operated defendants' car as an employee of defendant Uber.

17.     Upon information and belief on or before September 2, 2017 defendant Fahad operated defendants' car pursuant to a written agreement with defendant Uber wherein defendant Fahad acted as an agent of defendant Uber.

18.     Upon information and belief on or before September 2, 2017 defendant Fahad operated defendants' car pursuant to a written agreement with defendant Uber wherein defendant Fahad acted as an employee of defendant Uber.

19.     Upon information and belief on or before September 2, 2017 defendant Fahad operated defendants' car as an employee of defendant Uber.

20.     Upon information and belief on or before September 2, 2017 defendant Fahad operated defendants' car as an agent of defendant Uber.

21.      Upon information and belief on or before September 2, 2017 defendant CH operated, maintained, controlled, repaired defendants' car pursuant to a written agreement with defendant Uber USA wherein defendant CH acted as an agent of defendant Uber USA.

22.      Upon information and belief on or before September 2, 2017 defendant CH operated, maintained, controlled, repaired defendants' car pursuant to a written agreement with defendant Uber USA wherein defendant CH acted as an employee of defendant Uber USA.

23.      Upon information and belief on or before September 2, 2017 defendant CH operated defendants' car as an agent of defendant Uber USA.

24.      Upon information and belief on or before September 2, 2017 defendant CH operated defendants' car as an employee of defendant Uber USA.

25.      Upon information and belief on or before September 2, 2017 defendant Fahad operated defendants' car pursuant to a written agreement with defendant Uber USA wherein defendant Fahad acted as an agent of defendant Uber USA.

26.      Upon information and belief on or before September 2, 2017 defendant Fahad operated defendants' car pursuant to a written agreement with defendant Uber USA wherein defendant Fahad acted as an employee of defendant Uber USA.

27.      Upon information and belief on or before September 2, 2017 defendant Fahad operated defendants' car as an employee of defendant Uber USA.

28.      Upon information and belief on or before September 2, 2017 defendant Fahad operated defendants' car as an agent of defendant Uber USA.

29.      Upon information and belief on or before September 2, 2017 defendant CH operated, maintained, controlled, repaired defendants' car pursuant to a written agreement with defendant Raiser wherein defendant CH acted as an agent of defendant Raiser.

30.     Upon information and belief on or before September 2, 2017 defendant CH operated, maintained, controlled, repaired defendants' car pursuant to a written agreement with defendant Raiser wherein defendant CH acted as an employee of defendant Raiser.

31.     Upon information and belief on or before September 2, 2017 defendant CH operated defendants' car as an agent of defendant Raiser.

32.     Upon information and belief on or before September 2, 2017 defendant CH operated defendants' car as an employee of defendant Raiser.

33.     Upon information and belief on or before September 2, 2017 defendant Fahad operated, maintained, controlled, repaired defendants' car pursuant to a written agreement with defendant Raiser wherein defendant Fahad acted as an agent of defendant Raiser.

34.     Upon information and belief on or before September 2, 2017 defendant Fahad operated, maintained, controlled, repaired defendants' car pursuant to a written agreement with defendant Raiser wherein defendant Fahad acted as an employee of defendant Raiser.

35.     Upon information and belief on or before September 2, 2017 defendant Fahad operated defendants' car as an agent of defendant Raiser.

36.     Upon information and belief on or before September 2, 2017 defendant Fahad operated defendants' car as an employee of defendant Raiser.

37.     Upon information and belief on or before September 2, 2017 defendant Fahad received expressed or implied authorization and consent to operate defendants' car.

38.     Upon information and belief, at all times herein mentioned, defendant Uber is engaged in business in the State of New York.

39.     Upon information and belief, at all times herein mentioned, defendant Uber derived substantial revenue from engaging in business in the State of New York.

40.     Upon information and belief, at all times herein mentioned, defendant Uber engages companies, like defendant CH, as livery companies.

41.     Upon information and belief, at all times herein mentioned, defendant Uber engages individuals, like defendant Fahad, as livery drivers.

42.     Upon information and belief, at all times herein mentioned, defendant Uber engaged defendant CH as a livery company in the State of New York.

43.     Upon information and belief, at all times herein mentioned, defendant Uber engaged defendant Fahad as a livery driver in the State of New York.

44.     Upon information and belief, at all times herein mentioned, defendant CH was an employee, agent or servant of defendant Uber.

45.     Upon information and belief, at all times herein mentioned, defendant Fahad was an employee, agent or servant of defendant Uber.

46.     Upon information and belief, at all times herein mentioned, defendant CH was operating defendants' car in furtherance of the business of and in the scope of its employment and/or agency with defendant Uber.

47.     Upon information and belief, at all times herein mentioned, defendant Fahad was operating defendants' car in furtherance of the business and in the scope of his employment and/or agency with defendant Uber.

48.     Upon information and belief, at all times herein mentioned, defendant CH was an agent of defendant Uber.

49.     Upon information and belief, at all times herein mentioned, defendant Fahad was an agent of defendant Uber.

50.     Upon information and belief, at all times herein mentioned, defendant Uber was vicariously liable for the negligence of defendant CH.

51.     Upon information and belief, at all times herein mentioned, defendant Uber was vicariously liable for the negligence of defendant Fahad.

52.     Upon information and belief, at all times herein mentioned, defendant Uber USA is engaged in business in the State of New York.

53.     Upon information and belief, at all times herein mentioned, defendant Uber USA derived substantial revenue from engaging in business in the State of New York.

54.     Upon information and belief, at all times herein mentioned, defendant Uber USA engages companies, like defendant CH, as livery companies.

55.     Upon information and belief, at all times herein mentioned, defendant Uber USA engages individuals, like defendant Fahad, as livery drivers.

56.     Upon information and belief, at all times herein mentioned, defendant Uber USA engaged defendant CH as a livery company in the State of New York.

57.     Upon information and belief, at all times herein mentioned, defendant Uber USA engaged defendant Fahad as a livery driver in the State of New York.

58.     Upon information and belief, at all times herein mentioned, defendant CH was an employee, agent or servant of defendant Uber USA.

59.     Upon information and belief, at all times herein mentioned, defendant Fahad was an employee, agent or servant of defendant Uber USA.

60.     Upon information and belief, at all times herein mentioned, defendant CH was operating defendants' car in furtherance of the business of and in the scope of its employment and/or agency with defendant Uber USA.

61.     Upon information and belief, at all times herein mentioned, defendant Fahad was operating defendants' car in furtherance of the business and in the scope of his employment and/or agency with defendant Uber USA.

62.     Upon information and belief, at all times herein mentioned, defendant CH was an agent of defendant Uber USA.

63.     Upon information and belief, at all times herein mentioned, defendant Fahad was an agent of defendant Uber USA.

64.     Upon information and belief, at all times herein mentioned, defendant Uber USA was vicariously liable for the negligence of defendant CH.

65.     Upon information and belief, at all times herein mentioned, defendant Uber USA was vicariously liable for the negligence of defendant Fahad.

66.     Upon information and belief, at all times herein mentioned, defendant Raiser is engaged in business in the State of New York.

67.     Upon information and belief, at all times herein mentioned, defendant Raiser derived substantial revenue from engaging in business in the State of New York.

68.     Upon information and belief, at all times herein mentioned, defendant Raiser engages companies, like defendant CH, as livery companies.

69.     Upon information and belief, at all times herein mentioned, defendant Raiser engages individuals, like defendant Fahad, as livery drivers.

70.     Upon information and belief, at all times herein mentioned, defendant Raiser engaged defendant CH as a livery company in the State of New York.

71.     Upon information and belief, at all times herein mentioned, defendant Raiser engaged defendant Fahad as a livery driver in the State of New York.

72.     Upon information and belief, at all times herein mentioned, defendant CH was an employee, agent or servant of defendant Raiser.

73.     Upon information and belief, at all times herein mentioned, defendant Fahad was an employee, agent or servant of defendant Raiser.

74.     Upon information and belief, at all times herein mentioned, defendant CH was operating defendants' car in furtherance of the business of and in the scope of its employment and/or agency with defendant Raiser.

75.     Upon information and belief, at all times herein mentioned, defendant Fahad was operating defendants' car in furtherance of the business and in the scope of his employment and/or agency with defendant Raiser.

76.     Upon information and belief, at all times herein mentioned, defendant CH was an agent of defendant Raiser.

77.     Upon information and belief, at all times herein mentioned, defendant Fahad was an agent of defendant Raiser.

78.     Upon information and belief, at all times herein mentioned, defendant Raiser was vicariously liable for the negligence of defendant CH.

79.     Upon information and belief, at all times herein mentioned, defendant Raiser was vicariously liable for the negligence of defendant Fahad.

80.     Upon information and belief, at all times herein mentioned, defendant CH is engaged in business in the State of New York.

81.     Upon information and belief, at all times herein mentioned, CH derived substantial revenue from engaging in business in the State of New York.

82.     Upon information and belief, at all times herein mentioned, defendant CH engages individuals, like defendant Fahad, as livery drivers.

83.     Upon information and belief, at all times herein mentioned, defendant CH engaged defendant Fahad as a livery driver in the State of New York.

84.     Upon information and belief, at all times herein mentioned, defendant Fahad was operating defendants' car in furtherance of the business and in the scope of defendant Fahad's employment with defendant CH.

85.     Upon information and belief, at all times herein mentioned, defendant Fahad was an employee, agent or servant of defendant CH.

86.     Upon information and belief, at all times herein mentioned, defendant CH was vicariously liable for the negligence of defendant Fahad.

87.     Upon information and belief on or before September 2, 2017 defendant CH operated its vehicle in the capacity of a livery vehicle for defendant Uber, an international company providing car services "on demand" for millions of riders annually.

88.     Upon information and belief on or before September 2, 2017 defendant CH paid for and downloaded proprietary Uber software that enabled defendant CH to communicate with and transport Uber passengers also using defendant Uber proprietary software.

89.     Upon information and belief on or before September 2, 2017 defendant CH operated its vehicle in the capacity of a livery vehicle for defendant Uber USA, an international company providing car services "on demand" for millions of riders annually.

90.     Upon information and belief on or before September 2, 2017 defendant CH paid for and downloaded proprietary defendant Uber USA software that enabled defendant CH to communicate with and transport Uber USA passengers also using defendant Uber USA's proprietary software.

91.     Upon information and belief on or before September 2, 2017 defendant CH operated its vehicle in the capacity of a livery vehicle for defendant Raiser, an international company providing car services "on demand" for millions of riders annually.

92.     Upon information and belief on or before September 2, 2017 defendant CH paid for and downloaded proprietary software of defendant Raiser that enabled defendant CH to communicate with and transport Raiser passengers also using defendant Raiser's proprietary software.

93.     Upon information and belief on or before September 2, 2017 defendant Fahad operated his vehicle in the capacity of a livery vehicle for defendant Uber, an international company providing car services "on demand" for millions of riders annually.

94.     Upon information and belief on or before September 2, 2017 defendant Fahad paid for and downloaded proprietary Uber software that enabled defendant Fahad to communicate with and transport Uber passengers also using defendant Uber proprietary software.

95.     Upon information and belief on or before September 2, 2017 defendant Fahad operated his vehicle in the capacity of a livery vehicle for defendant Uber USA, an international company providing car services "on demand" for millions of riders annually.

96.     Upon information and belief on or before September 2, 2017 defendant Fahad paid for and downloaded proprietary defendant Uber USA software that enabled defendant Fahad to communicate with and transport Uber USA passengers also using defendant Uber USA's proprietary software.

97.     Upon information and belief on or before September 2, 2017 defendant Fahad operated his vehicle in the capacity of a livery vehicle for defendant Raiser, an international company providing car services "on demand" for millions of riders annually.

98.     Upon information and belief on or before September 2, 2017 defendant Fahad paid for and downloaded proprietary software of defendant Raiser that enabled defendant Fahad to communicate with and transport Raiser passengers also using defendant Raiser's proprietary software.

99.    Defendants Uber USA and Raiser enter into contracts with drivers so that drivers can use defendants' software applications to perform their functions as drivers for defendants Uber, Uber USA and Raiser.

100.    Defendants Uber, Uber USA and Raiser function as a single enterprise.

101.    Defendants Uber USA and Raiser facilitate the employment of vehicle owners by defendant Uber.  Defendants Uber USA and Raiser enter contracts that enable vehicle owners to use defendant Uber software.  Without Uber software, vehicle owners like defendant CH could not use their vehicles as Uber vehicles or accept passengers using Uber software to request Uber rides.

102.    Upon information and belief on or before September 2, 2017 defendant CH entered into a contract with defendant Uber USA enabling defendant CH to operate defendants' car as an Uber car using Uber software and receiving Uber requests for Uber rides by Uber passengers.

103.    Upon information and belief on or before September 2, 2017 defendant CH entered into a contract with defendant Raiser enabling defendant CH to operate defendants' car as an Uber vehicle and access Uber software enabling defendant CH to receive Uber requests for Uber rides from Uber passengers.

104.    Upon information and belief on or before September 2, 2017 defendants Uber USA and Raiser facilitate the employment of drivers by defendant Uber.  Defendant Uber USA and Raiser enter contracts with drivers to use Uber software.  Without the Uber software, drivers like defendant Fahad could not become Uber drivers or perform their functions as Uber drivers.

105.    Upon information and belief on or before September 2, 2017 defendant Fahad entered into a contract with defendant Uber USA that enabled defendant Fahad to operate defendants' car as an Uber vehicle and access Uber software enabling defendant Fahad to receive Uber requests for Uber rides by Uber passengers.

106.     Upon information and belief on or before September 2, 2017 defendant Fahad entered into a contract with defendant Raiser enabling defendant Fahad to operate defendants' car as an Uber vehicle and access Uber software enabling defendant Fahad to receive Uber requests for Uber rides by Uber passengers.

107.     Upon information and belief on or before September 2, 2017 defendant Uber USA licenses mobile application technology from defendant Uber and arranges for drivers to use the application.

108.     Upon information and belief on or before September 2, 2017 defendant Raiser licenses mobile application technology from defendant Uber Technology and arranges for drivers to use the application.

109.     Upon information and belief on or before September 2, 2017 defendants Uber, Uber USA and Raiser are named as insureds and/or additional insureds on liability insurance policies covering the operation of Uber vehicles by Uber drivers under contract with Uber USA and Raiser.

110.     Defendants Uber USA and Raiser issue receipts to Uber drivers upon bringing Uber passengers to their destinations.

111.     Defendant Uber USA and Raiser coordinate payments to drivers, like defendant Fahad.

112.     Without the activities of defendant Uber's wholly owned subsidiaries Uber USA and Raiser defendant Uber could not engage in its transportation business.

113.     Defendant Uber dominates and controls the activities of defendants Uber USA and Raiser with respect to the employment and management of Uber drivers, licensing of Uber software and the entire process whereby Uber drivers transport Uber passengers using "Uber."

114.   Defendants Uber, Uber USA and Raiser serve as representatives, agents, joint venture participants or alter egos of each other.

115.   Defendants Uber, Uber USA and Raiser operated and continue to operate in concert to manager, promote and sell the business of a transportation network.

116.   Defendants Uber USA and Raiser are undercapitalized and rely upon the financial resources of defendant Uber to function.

117.   At all relevant times, the finances of defendants Uber USA and Raiser are intermingled with the finances of defendant Uber.

118.   At all relevant times, defendants Uber USA and Raiser obtain the funding to operate from their parent company and sole member, defendant Uber.

119.   Defendants Uber USA and Raiser are alter egos of the parent defendant Uber.

120.   It would be inequitable and unjust to impose any real distinction between defendants Uber, Uber USA and Raiser.

121.   Defendant Uber, Uber USA and Raiser function as a single enterprise, with joint economic, budgetary and operational planning.

122.   Upon information and belief on or before September 2, 2017 defendant CH was an employee, agent or servant of defendant Uber, Uber USA and Raiser.

123.   Upon information and belief on or before September 2, 2017 defendant Fahad was an employee, agent or servant of defendant Uber, Uber USA and Raiser.

124.   Defendants Uber, Uber USA and Raiser controlled the manner in which defendant Fahad provided services as an Uber driver.

125.   Without his contract with defendants Uber, Uber USA and Raiser, and permission to use proprietary software, which provided passengers for fares, defendant Fahad would not have been able to serve as an Uber driver.

126.    As an Uber driver, defendant Fahad was subject to the control of the defendants Uber, Uber USA and Raiser, through their policies, procedures and proprietary software.

127.    Defendants Uber, Uber USA and Raiser required that defendant Fahad post a sign with the logo "UBER" on it so that it was viewable from outside of defendants' car to passerby, pedestrians and Uber customers/riders.

128.    Utilizing proprietary software, defendants Uber, Uber USA and Raiser controlled and limited the geographic range or "territory" in which defendant Fahad could operate as an Uber driver.  By agreement with Uber drivers, a driver's "territory" means the city or metro area in the United States in which he or she is enabled by the "Drive App" to receive requests for Transportation Services.

129.    Defendant Fahad worked for defendants Uber, Uber USA and Raiser pursuant to a contract and worked pursuant to that contract on the date and time of the subject accident.

130.    Defendants Uber, Uber USA and Raiser developed, distributed and relied upon proprietary software program(s) to operate their transportation business.

131.    Defendants Uber, Uber USA and Raiser dictated how defendant Fahad was to use their software program(s) to carry out his work as an Uber driver.

132.    As an Uber driver, defendant Fahad had to transport the passengers who summoned him via the defendants Uber, Uber USA and Raiser's proprietary software.

133.    Defendant Fahad's contract with defendants Uber, Uber USA and Raiser prohibited him from declining a fare based upon the requested destination.

134.    Through operation of the "Uber" software application, defendant Fahad was not even advised of a new passenger's destination until that passenger was picked up.

135.    Defendants Uber, Uber USA and Raiser conduct background checks of candidates before allowing them to serve as Uber drivers.

136.   Defendants Uber, Uber USA and Raiser do not require that their drivers have unique skills of the type that independent contractors would.

137.   At the same time defendants Uber, Uber USA and Raiser provide uniform training to their drivers.

138.   Defendants Uber, Uber USA and Raiser assist all of their drivers in securing the needed clearance and licenses to drive.

139.   In New York City, for example, defendants Uber, Uber USA and Raiser assist their drivers in securing licenses from the City Taxi and Limousine Commission ("TLC").

140.   Defendants Uber, Uber USA and Raiser provide defensive driving courses required by the TLC free of charge to prospective drivers.

141.   Defendants Uber, Uber USA and Raiser provide their drivers with a medical examination mandated by TLC.

142.   Defendants Uber, Uber USA and Raiser required that defendant Fahad maintain liability insurance at minimum levels required by state and local law.

143.   To entice drivers, defendants Uber, Uber USA and Raiser offer guaranteed monthly wages.

144.   Defendants Uber, Uber USA and Raiser compensated defendant Fahad based upon Uber rides he provided to defendant Uber's customer/riders.

145.   Defendants Uber, Uber USA and Raiser dictated how much compensation defendant Fahad was to receive from a ride.

146.   Defendant Fahad while working as an Uber driver could not dictate the price of a passenger's trip.

147.   Defendants Uber, Uber USA and Raiser dictated the rates passengers transported by defendant Fahad were charged.

148.     Defendants Uber, Uber USA and Raiser may change rates at any time, and advise their drivers that they reserve the right to do so.

149.     Defendants Uber, Uber USA and Raiser provided the electronic means by which passengers would request to travel with Uber, using defendant Fahad as a driver.

150.     Defendants Uber, Uber USA and Raiser provide Uber passengers with the opportunity to review and "rate" Uber drivers, such as defendant Fahad.  Ratings and reviews are completed utilizing proprietary software, accessed by the passengers via smartphone or computer.

151.     Defendants Uber, Uber USA and Raiser require that Uber drivers, such as defendant Fahad, maintain what they call a "rating" from passengers, If Uber drivers do not maintain such rating, they lose access to defendants Uber, Uber USA and Raiser's proprietary software, and accordingly, the ability to earn money from transporting passengers.

152.     Accordingly, defendants Uber, Uber USA and Raiser set the terms and conditions of defendant Fahad's services as an Uber driver and must be considered to be his employer for the purposes of assessing and imposing vicarious liability.

153.     That at all times hereinafter mentioned, Lexington Avenue at or about its intersection with 31st Street in the County, City and State of New York (hereinafter "place of the accident") was and still is a public thoroughfare over and along the streets of which the public has a right to travel.

154.     That at all times hereinafter mentioned and at the time of the within motor vehicle accident on September 2, 2017, the State of New York had erected, *inter alia*, traffic signs, stop signs, turning signs and/or no turning signs, traffic signals and/or traffic lights and/or other traffic control devices at the place of the accident.

155.     That at all times herein mentioned, the City of New York had erected the aforementioned traffic control devices both on Lexington Avenue and 31st Street at or near the intersection of these two thoroughfares in order to control the flow of traffic and at the same time the City of New York had enacted ordinances requiring, *inter alia*, (a) motor vehicles to come to a full stop when the traffic light is red; (b) motor vehicles to proceed when the traffic light is green; (c) motor vehicles to not make left turns when a no left turn sign is present; (d) motor vehicles to not make left turns when traffic conditions do not permit such a left turn to be safely made; (e) motor vehicles to always keep a proper lookout for pedestrians; (f) motor vehicles to always allow a pedestrian the right of way; (g) motor vehicles to never enter a crosswalk while a pedestrian is attempting to cross the street in that crosswalk; (h) motor vehicles to always sound their horn before entering a crosswalk or an intersection while a pedestrian is attempting to cross the street and/or (i) motor vehicles to decrease speed before entering a crosswalk or an intersection while a pedestrian is attempting to cross the street.

156.     On September 2, 2017, at about 6:55 PM, plaintiff-pedestrian walked across Lexington Avenue in the marked crosswalk with the walk signal illuminated for pedestrians to cross Lexington Avenue at the intersection of Lexington Avenue and 31st Street.  At that place and time defendant Fahad was driving defendants' car on 31st Street at or near its intersection with Lexington Avenue in the County, City and State of New York.

157.     On or about the aforementioned date and time, while the plaintiff-pedestrian was within the crosswalk crossing with the walk signal illuminated, walking across Lexington Avenue at or about its intersection with 31st Street, defendant Fahad failed to yield to the plaintiff-pedestrian and attempted an improper turn onto Lexington Avenue striking the plaintiff-pedestrian.

158.     At the time of the accident, defendant Fahad was driving an Uber passenger who requested the Uber ride through defendant Uber's app/communications system.

159.   At the time of the accident, defendant Fahad failed to look to make sure it was safe to proceed into the crosswalk and failed to yield to a pedestrian because defendant Fahad was distracted by defendant Uber's app/communications system.

160.   Defendant Uber's app/communications system is a defectively designed product because it actively encourages distracted driving.

161.   On or about the aforementioned date and time, defendants were negligent, careless and reckless in the operation of defendants' car while traveling at or about the intersection of Lexington Avenue and 31st Street, *inter alia*, by negligently, carelessly and recklessly attempted an improper turn, failed to yield to the plaintiff-pedestrian and struck the plaintiff-pedestrian as plaintiff-pedestrian was lawfully attempting to cross Lexington Avenue within the crosswalk with the walk signal. Defendants were negligent, careless and reckless while operating defendants' car causing a crash between defendants' car and the plaintiff-pedestrian, thus causing plaintiff-pedestrian to sustain severe, serious and permanent personal injuries.

162.   On the aforementioned date and time, defendants negligently, carelessly and recklessly failed to stop and/or slow defendants' car and negligently, carelessly and recklessly failed to avoid, evade, avert or prevent the crash between defendants' car and the plaintiff-pedestrian, thus causing plaintiff-pedestrian to sustain severe, serious and permanent personal injuries.

163.   The accident and the injuries suffered by plaintiff-pedestrian in the accident were caused wholly and solely by the negligence, carelessness and recklessness of the defendants and were not due to any fault or lack of care on the part of the plaintiff-pedestrian.

164.   That the defendants were negligent, careless and reckless in the ownership, operation, management, maintenance and control of defendants' car and defendants' negligence,

carelessness and recklessness were in no way due to fault or lack of care on the part of the plaintiff-pedestrian.

165.    That the limitations on liability set forth in Article 16 of the CPLR do not apply as plaintiff-pedestrian's action falls within the exemption set forth in CPLR 1602(6).

166.    That solely by reason of all the foregoing, the plaintiff-pedestrian sustained serious, severe and permanent personal injuries and was rendered sick, sore, lame and disabled with multiple contusions and abrasions in and about diverse parts of her person; experienced extreme pain and suffering and continues to suffer from said injuries; that the plaintiff-pedestrian has been informed and believes that her injuries are of a permanent nature and the plaintiff-pedestrian did seek medical aid, attention and treatment and will be required to do so in the future.

167.    That solely by reason of the foregoing, the plaintiff-pedestrian has sustained a "serious injury" as defined in New York Insurance Law 5102(d) and/or economic loss greater than "basic economic loss" as defined by New York Insurance Law 5102 (a).

168.    That solely by reason of the foregoing, the plaintiff-pedestrian has been damaged in the sum of Ten Million Dollars ($10,000,000).

169.    Plaintiff demands a trial by jury on all issues.

WHEREFORE, plaintiff Clara Hickerson demands judgment against defendants Uber Technologies, Uber USA LLC, Raiser-NY Inc., CH Brothers and Ama Fahad in the amount of Ten Million Dollars ($10,000,000) together with the costs and disbursements of this action and such other and further relief as this Court deems just and proper.

Dated: New York, NY
          October 31, 2017

                              Respectfully submitted,
                              McCarthy | Kelly LLP

                              By _____

                                 William P. Kelly
                                 WK 4641
                                 A Member of the Firm
                                 Attorneys for Plaintiff
                                 52 Duane Street
                                 New York, NY 10007
                                 Tel: (212) 732-5040
                                 Fax: (212) 732-6323


TO:    Uber Technologies
       C/O C T Corporation System
       111 Eighth Avenue
       New York, NY 10011

       Uber USA, LLC
       2755 Jackson Ave
       Long Island City, NY 11101

       Raiser-NY Inc.
       636 28th Street, 3rd Floor
       New York, NY 10001

       CH Brothers, Inc.
       26 Ebbitts Street, Suite 3T
       Staten Island, NY 10306

       Ama Fahad
       40-000 Judge Street, Apartment 5J
       Queens, NY 11373

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CLARA HICKERSON,                                    :           17 Civ. _____

                    Plaintiff,              :
                                                      Rule 7.1(a) Statement
          - against -                         :

UBER TECHNOLOGIES, UBER USA, LLC (*a*        :
*wholly owned subsidiary of Uber Technologies*),
RAISER-NY, INC. (*a wholly owned subsidiary*       :
*of Uber Technologies*), CH BROTHERS INC.
and AMA FAHAD,                                      :

                   Defendants.            :
------------------------------------------------------------------x

PURSUANT to Rule 7.1(a) of the Federal Rules Civil Procedure, in order to enable judges and magistrate judges of the Court to evaluate possible disqualification or recusal, the undersigned counsel for plaintiff, a non-governmental party, certifies that the following are corporate parents, affiliates and/or subsidiaries of said party which are publicly held: NONE.

Dated: New York, NY
       October 31, 2017

                                 Respectfully submitted,
                                 McCarthy | Kelly LLP

By _____
                                 William P. Kelly
                                 WK 4641
                                 A Member of the Firm
                                 Attorneys for Plaintiff
                                 52 Duane Street
                                 New York, NY 10007
                                 Tel: (212) 732-5040
                                 Fax: (212) 732-6323